**EXHIBIT 1**

# IRREVOCABLE LIFE INSURANCE TRUST AGREEMENT

THIS AGREEMENT, entered into this 24th day of April, 1953, by and between JAMES W. WALTHER of Montgomery County, Ohio, hereinafter referred to as the Insured, and THE WINTERS NATIONAL BANK AND TRUST COMPANY OF DAYTON, at Dayton, Montgomery County, Ohio, hereinafter referred to as the Trustee;

## WITNESSETH:

WHEREAS the policies of life and/or accident insurance issued on the life of the said JAMES W. WALTHER which are listed on the attached Schedule "A" are to be made payable to and deposited with the Trustee;

NOW, THEREFORE, the parties hereto agree that at the death of the Insured, the Trustee shall collect the total amount of the insurance then payable to it as Trustee hereunder and shall hold the amount so collected, together with any other property received by it from the insured's estate or from any other source, upon the following uses and trusts;

ARTICLE I. USES AND TRUSTS.

The Trustee shall divide the proceeds of the Insured's insurance in two equal parts, and shall place one of such equal parts in Trust A as hereinafter set forth, and the other equal part shall be placed in Trust B as hereinafter set forth. The Trustee shall hold, manage, invest and reinvest both Trust A and Trust B as is more particularly hereinafter set forth, and, after deducting all costs, charges and commissions, shall distribute the net income and the principal of both Trust A and Trust B as is more particularly hereinafter set forth, and, after deducting all costs, charges and commissions, shall distribute the net income and the principal of both Trust A and Trust B as follows:

TRUST A:

A. The Trustee shall distribute to the Insured's wife, DOROTHY H. WALTHER, the entire net income from Trust A in quarter-annual installments during her lifetime. In addition thereto, the Insured's said

HW003512

wife shall have the right at any time to withdraw all or any part of the principal of Trust A from the trust estate for any purpose or reason whatsoever. In the event that the Insured's wife is unable to exercise this privilege on her own behalf, the Trustee is given the sole and absolute discretion to use the principal of Trust A, or any part thereof, even to the exhaustion thereof, for the benefit of the Insured's said wife if her income from all sources is insufficient for her comfort, maintenance, support and general well-being, or to continue the standard of living to which she is accustomed, or to aid her in the event of any accident, injury, illness or other emergency affecting her in which money would be of some use.

B. Upon the death of the Insured's said wife, DOROTHY B. PALMER, the Trustee shall distribute the then remaining principal of Trust A, and any accrued income thereon, to such persons, associations or corporations, including the estate of the Insured's wife, or any charitable institution as she, DOROTHY B. PALMER, shall by her Last Will and Testament appoint.

C. In default of the effective exercise of the General Power of Appointment herein conferred upon the Insured's said wife, or upon the Insured's death if she predeceases him, the Trustee shall add the then remaining principal of Trust A, and any accrued income thereon, to Trust B, as hereinafter created and shall hold the same for all the uses and purposes and subject to the terms and conditions as herein set forth.

TRUST B.

A. The Trustee shall distribute to the Insured's wife, DOROTHY B. PALMER, the entire net income from Trust B in quarter-annual installments during her lifetime or until her remarriage. In addition thereto, the Trustee, in its sole and absolute discretion, is authorized to use the principal of Trust B, or any part thereof, even to the exhaustion thereof, for the benefit of the Insured's said wife and children, in the event that her income from all sources is insufficient for her or their comfort, maintenance, support, education and general well-being, or to continue the standard of living to

- 2 -
HW00351 2

which they are accustomed, or to aid them in the event of any accident, illness, injury or other emergency affecting them in which money would be of some use.

B. Upon the death of the survivor of the Insured and his wife, DOROTHY B. WALTHER, or upon the remarriage of the said DOROTHY B. WALTHER, the Trustee shall divide the trust estate into as many equal shares as there are children of the Insured then living and children of the Insured then deceased, but with issue surviving them at that time.

1. One of such equal shares shall be distributed, per stirpes and absolutely, but subject to the minority provisions hereinafter set forth, to the then surviving issue of each deceased child of the Insured.

2. One of such equal shares shall be held for the use and benefit of each of the Insured's then living children, and the Trustee shall use and expend the income and principal thereof for the care, comfort, maintenance and education of each of the Insured's said children until he or she attains the age of twenty-one (21) years. When each of the Insured's said children respectively attains the age of twenty-one (21) years, the Trustee shall pay to him or to her the net income from his or her share of the trust estate in convenient installments, and such principal from such trust estate as the Trustee deems necessary for his or her education or welfare, until he or she attains the age of thirty (30) years, at which time the trust shall terminate as to such such child and the Trustee shall pay over to him or to her all of the then remaining principal of his or her share of the trust estate, and any accrued income thereon, absolutely freed and discharged of any and all trust hereunder; provided, however, that when each of the Insured's said children attains the age of twenty-one (21) years, he or she shall have the power to withdraw one-third (1/3) of the principal of his or her share of the trust estate as it is then constituted, and that when each of the Insured's said children attains the age of twenty-five (25) years, he or she shall have the power to withdraw one-half (1/2) of the remaining principal of his or her

- 3 -

share of the trust estate as it is then constituted. In the event that any of the Insured's children die during the continuance of the trust herein created for his or her benefit, the Trustee shall distribute the then remaining principal of his or her share of the trust estate, and any accrued income thereon, to his or her then surviving issue, absolutely and per stirpes, but subject to the minority provisions hereinafter set forth. In the event that such child of the Insured dies survived by no issue, the Trustee shall divide the then remaining principal of his or her share of the trust estate, and any accrued income thereon, among the other original shares of the trust estate and shall hold the same in trust or distribute the same in the same manner as such original shares were held or distributed.

3. It is agreed that the Trustee shall exercise its discretion in applying the income and principal of Trust B for the use and benefit of the Insured's children as set forth in the terms and provisions herein so that the desire of the Insured that his children become self-sufficient as soon as possible is fulfilled. When each of the Insured's said children attains the age of twenty-one (21) years, or at any time thereafter, the Trustee may distribute to him or to her so much of the principal of his or her share as in the judgment and discretion of the Trustee may be required by him or her to establish him or her in a business or profession or to enable him or her to construct a residence dwelling.

ARTICLE II. TERMS AND CONDITIONS.

A. The beneficial interest in any trust held hereunder shall not be alienated or disposed of or in any manner encumbered while in the possession of the Trustee. Should any beneficiary alienate, charge, dispose of or encumber his or her interest in any trust held hereunder, either the income or principal thereof before the same shall have been delivered to him or her under the provisions of this Agreement or should any creditor of any beneficiary of such trust attempt to seize any funds in the hands of the Trustee, and thereby deprive any beneficiary of the enjoyment thereof, the

- 4 -

trust as to the beneficiary whose interest may be so affected, shall thereupon cease and determine, and shall thereafter during the remainder of the life of said beneficiary, be held and distributed by the Trustee according to its absolute discretion and thereafter the Trustee shall pay to such beneficiary or for his or her maintenance and support from such interest only such sums as in the absolute discretion of the Trustee shall by it be deemed fit and proper.

B. If any beneficiary who is entitled to receive a final distributive share of the principal of the trust estate, shall be a minor, the Trustee is hereby authorized and empowered to continue to hold and manage such share for the benefit of such minor during his or her minority; but this authority shall be construed as a power only and shall not operate to suspend the absolute ownership thereof by such minor nor to prevent the absolute vesting thereof in such minor. The Trustee may, during the minority of such beneficiary, accumulate all or any part of said income or pay or use and expend so much thereof or so much of the principal of the trust estate as it shall deem proper for his or her education, maintenance or welfare. In the disbursement of funds directed to be paid to or for the use and benefit of any beneficiary who shall be a minor, the Trustee may make payment of the same to the parent, guardian or such other person as may have custody of the person of that minor at the time such payments are made, and when a minor has attained sufficient age to make it probable that the moneys will be properly expended, may pay directly to the minor, to be used for the education, maintenance and support of such minor, and the receipt of any such person shall be a full acquittance of the Trustee as to any amounts so paid.

ARTICLE III. THE TRUSTEE SHALL HAVE THE FOLLOWING POWERS:

A. To invest and reinvest principal and income coming into its possession in such common and preferred stocks, bonds, mortgages, securities and other property, real or personal, as it may believe advisable without being limited to the classes of investments in which trustees are authorized by law to invest trust funds.

- 5 -

B. To collect and receive the rents, issues and profits thereof; to control, maintain, repair, lease for any period irrespective of the duration of the trust, rent, exchange, sell, convey and transfer at public or private sale and without procuring an order of court, all or any part of the real or personal property comprising the trust estate, for such prices and upon such terms as the Trustee shall deem advisable, and to execute and deliver proper instruments of conveyance and transfer; to erect buildings and improvements thereon and to partition and divide real estate, all upon such terms and conditions as it may determine.

C. To determine what is principal or income and apportion in its discretion expenses as between those accounts.

D. Upon any partial or final distribution to make such distribution in cash or in kind or partly in cash and partly in kind, selling so much of the assets as the Trustee may deem necessary to make distribution.

E. To compromise, settle and adjust any and all claims which may be owing to, or owing by the trust estate.

F. To execute and deliver proxies, powers of attorney, and other such instruments as are incident to the holding, control and voting of corporate securities, or the sale or exchange thereof; and to cause any property or securities comprising a part of the trust estate to be insured, held or registered in the name of the Trustee's nominee, or in such other form that title will pass by delivery.

G. To exchange the securities of any corporation for other securities issued by it, or by any other corporation, at such times and upon such terms and conditions as the Trustee shall deem advisable; to consent to the reorganization, consolidation or merger of any corporation, or to the sale or lease of its property, or any portion thereof, to any person or corporation, or to the lease by any person or corporation of his or its property or any portion thereof, to such corporation, and upon such reorganization, consolidation, merger, sale or lease to exchange the securities held by it for the securities issued in connection therewith; to pay all assessments, subscriptions

- 6 -

and other sums of money as the Trustee may deem expedient for the protection of its interests as holder of any option contained in any stocks, bonds or other securities or for the conversion of the same into other securities; or to take advantage of any rights to subscribe for additional stocks, bonds or other securities or to sell the same, and to make any and all necessary payments therefor, provided, however, that the Trustee shall not make any of the payments herein provided except from principal.

H. To purchase as an investment for the trust estate any securities or other property, real or personal, belonging to the estate of the Insured, and to hold the same for such period of time as the Trustee may believe advisable, without liability for any depreciation in the value thereof; or, in its discretion, to make loans, secured or unsecured, to the Insured's estate without liability for the non-payment thereof.

ARTICLE IV.

It is agreed that the Trustee shall in no way be bound to pay the premiums on any policy or policies payable hereunder, nor to see that any such policy or policies are kept in force, its obligation regarding the policies during the Insured's lifetime being confined to the safekeeping thereof.

ARTICLE V.

A. The Insured reserves the right during his lifetime to revoke, alter or amend this Agreement, in whole or in part, by serving written notification to that effect on the Trustee.

B. All benefits, privileges and options accruing or available under any of said insurance policies prior to the death of the Insured, including any right reserved in any of said policies to the Insured to change the beneficiary thereunder, to convert the said policies into other forms of policies, to borrow in accordance with the terms of said policies, to pledge, hypothecate, sell or assign the same or any of them, and to receive and collect all dividends and other payments and the proceeds of maturing policies, shall be for the sole benefit of the Insured and shall not be subject to this trust. If the Insured changes the beneficiary under any of said

- 7 -

policies or surrenders any such policy for its cash surrender value, such act shall have the effect of revoking this trust with respect to the policy or policies so changed or surrendered.

C. It is also expressly understood and agreed that any or all of the policies deposited under the terms of this Agreement may be assigned by the Insured for the purpose of obtaining a loan on the said policy or policies, and that upon the Insured's request the Trustee, as beneficiary named in any or all policies deposited hereunder, may join in such assignment to any individual, partnership, corporation or association, and in so doing shall not by reason of such joinder in any way be or become liable to any person interested hereunder.

D. Upon receipt of written request from the Insured the Trustee shall be bound to deliver to the Insured any policies in its possession and to reassign to the Insured any policies theretofore assigned to the Trustee.

E. The Insured shall have the right to include within this Agreement other life and/or accident insurance policies in addition to those described in Schedule "A" attached hereto.

ARTICLE VI.

The payment by an insurance company of the proceeds of any policy of insurance to the Trustee shall be a full discharge of said insurance company on account of such policy, and such insurance company shall in nowise be responsible for the proper discharge of the trust or any part thereof.

ARTICLE VII.

The Trustee shall be responsible for the proceeds of the policies only as, if and when paid to it, and the Trustee shall not be liable to anyone if for any reason the policies, or any of them, shall lapse or otherwise be uncollectable. Except at its own option, the Trustee shall not enter into or maintain any litigation to enforce payment of the policies, or any of them, until it shall have been indemnified to its satisfaction against all expenses and liabilities to which it may in its judgment be subjected by such action on its part, but the Trustee may utilize the proceeds of any

- 5 -

policy to meet expenses incurred in connection with enforcing payment of any other policy.

ARTICLE VIII.

This trust shall be considered as an Ohio Trust and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of that State.

ARTICLE IX.

During the lifetime of the Insured the Trustee shall receive no compensation for its services hereunder. Following the death of the Insured, the Trustee shall be entitled to deduct five per cent (5%) of the annual gross income of the trust estate as compensation hereunder, and in addition, upon termination, partial or final, to deduct from the principal a further reasonable sum as shall be agreed upon between the Trustee and the adult beneficiaries hereunder.

IN WITNESS WHEREOF, the Insured has hereunto set his hand and seal to duplicates hereof, and the Trustee has caused this agreement to be executed in duplicate by its duly authorized officer and the corporate seal hereunto affixed to duplicates hereof as of the day and year first above written.

WITNESS:                                INSURED:

_Howard W. Neiber_           _James W. Wattles_
                                        (TRUSTEE)

                                        THE WINTERS NATIONAL BANK AND TRUST
ATTEST:                                 COMPANY OF DAYTON, at Dayton, Ohio

_JP Stapuan_                 by _K. W. Graham_
                                        Act. Vice President

## AMENDMENT

WHEREAS, on the 24th day of April, 1953, JAMES W. WALTHER, of Montgomery County, Ohio, as the Insured, and THE WINTERS NATIONAL BANK AND TRUST COMPANY OF DAYTON, at Dayton, Ohio, as the Trustee, entered into a certain Revocable Life Insurance Trust Agreement; and

WHEREAS, the said Insured and the said Trustee desire to amend Article II, Paragraph A of the said Agreement;

NOW, THEREFORE, it is agreed by and between the said Insured and the said Trustee that Article II, Paragraph A of the original Agreement is hereby revoked in its entirety, and by way of substitution therefor the following Article II, Paragraph A, shall, and hereby does, become a part of the original Agreement as though fully incorporated and written therein:

ARTICLE II. TERMS AND CONDITIONS

A. The beneficial interest in Trust B, held hereunder, shall not be alienated or disposed of or in any manner encumbered while in the possession of the Trustee. Should any beneficiary alienate, charge, dispose of or encumber his or her interest in Trust B, either the income or principal thereof before the same shall have been delivered to him or her under the provisions of this Agreement or should any creditor of any beneficiary of Trust B attempt to seize funds in Trust B in the hands of the Trustee; and thereby deprive any beneficiary of the enjoyment thereof, the Trust as to the beneficiary whose interest may be so affected, shall thereupon cease and determine, and shall thereafter during the remainder of the life of said beneficiary, be held and distributed by the Trustee according to its absolute discretion and thereafter the Trustee shall pay to such beneficiary or for his or her maintenance and support from such interest in Trust B only such sums as in the absolute discretion of the Trustee shall by it be deemed fit and proper.

IN WITNESS WHEREOF, the Insured has hereunto set his hand and seal to duplicates hereof, and the Trustee has caused this amendment to be executed in duplicate by its duly authorized officer and the corporate seal hereunto affixed to duplicates hereof this 7th day of _____, 1953.

WITNESS:                                INSURED:
_____                         _____ James W. Walther

                                        TRUSTEE:
ATTEST:                                 THE WINTERS NATIONAL BANK AND TRUST
                                        COMPANY OF DAYTON, at Dayton, Ohio

_____                         _____
Trust Officer                           Assistant Vice President

## AMENDMENT TO REVOCABLE LIFE INSURANCE TRUST AGREEMENT

THIS AGREEMENT entered into this _4th_ day of _February_, 1971 by and between JAMES W. WALTHER and DOROTHY B. WALTHER, of Montgomery County, Ohio and THE FIRST NATIONAL BANK OF DAYTON at Dayton, Ohio,

### WITNESSETH

WHEREAS, James W. Walther and The Winters National Bank and Trust Company of Dayton at Dayton, Ohio did on the 24th day of April 1953, enter into a certain Revocable Life Insurance Trust Agreement, and an Amendment thereto on the 7th day of May, 1953, and

WHEREAS, James W. Walther under the provisions of said Agreement has notified The Winters National Bank and Trust Company of Dayton that he no longer desires said Bank to act as Trustee under said Agreement, and has revoked and cancelled said Bank as Trustee, and

WHEREAS, James W. Walther desires The First National Bank of Dayton at Dayton, Ohio and Dorothy B. Walther, to be the Successor Trustees under the terms and provisions of such Agreement,

NOW, THEREFORE, it is agreed between the parties hereto that the Revocable Life Insurance Trust Agreement dated April 24, 1953 as amended May 7, 1953 is hereby further amended to establish The First National Bank of Dayton at Dayton, Ohio and Dorothy B. Walther as Co-Trustees under said Revocable Life Insurance Agreement, and the said Bank and Dorothy B. Walther shall have all of the powers, authority and obligations formerly had by The Winters National Bank and Trust Company of Dayton under the provisions of said Agreement; provided, however, that with respect to paragraph A under TRUST B on page 3 of said original Agreement, wherever the word Trustee appears it shall refer only to The First National Bank of Dayton at Dayton, Ohio as corporate Trustee and not to Dorothy B. Walther.

It is further agreed that all of the other terms and provisions of the Agreement and Amendment thereto shall remain in full force and effect.

"IN WITNESS WHEREOF, James W. Walther and Dorothy B. Walther have set their hands to duplicates hereof, and The First National Bank of Dayton at Dayton, Ohio has caused this Amendment to be executed in duplicate by its duly authorized officer and the corporate seal hereunto affixed to duplicates hereof this _____ day of _____ 1972.

Witness:                                INSURED:

_____               _____

                                        CO-TRUSTEE:
                                        THE FIRST NATIONAL BANK OF
                                        DAYTON at Dayton, Ohio

Attest:                                 By _____

_____

Witness:

_____               _____
                                        Dorothy B. Walther, Co-Trustee